Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/20/2021 09:14 AM CDT

Eric J. Vyhlidal, appellant, v.
Nessa A. Vyhlidal, appellee.
___ N.W.2d ___

Filed May 28, 2021.    No. S-20-663.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

2. **Child Custody: Appeal and Error.** Relocation and child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Contempt.** The power to punish for contempt of court is a power inherent in all courts of general jurisdiction such as the district courts of this state.

5. ____. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.

6. ____. A party to an action who fails to obey an order of the court, made for the benefit of the opposing party, is, ordinarily, guilty of a mere civil contempt.

7. **Contempt: Proof: Stipulations.** In order to prove civil contempt, unless the alleged contemptuous acts occurred within the presence of the judge, or the parties stipulate otherwise, an evidentiary hearing is necessary

so that the moving party can offer evidence to demonstrate both that a violation of a court order occurred and that the violation was willful.

8. **Child Custody: Words and Phrases.** Under the Parenting Act, the concept of child custody encompasses both physical custody and legal custody, with legal custody focusing entirely on decisionmaking authority.

9. ____: ____. The term "joint legal custody" is the joint authority and responsibility for making major decisions regarding the child's welfare, while the term "sole legal custody" establishes that one party will have the final say in such decisions.

10. **Child Custody.** In child custody cases, the decision of where a child will attend school is a fundamental decision.

Appeal from the District Court for Garfield County: MARK D. KOZISEK, Judge. Reversed and remanded for further proceedings.

Loralea L. Frank and Nathan P. Husak, of Bruner, Frank, Schumacher & Husak, L.L.C., for appellant.

Vikki S. Stamm and Sarah M. Hammond, of Stamm, Romero & Associates, P.C., L.L.O., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

Eric J. Vyhlidal appeals the denial of his motion for an order to show cause based on Nessa A. Vyhlidal's relocation of their minor child. In denying the motion, the district court for Garfield County, Nebraska, found the parties' parenting plan did not require the minor child to attend school in Burwell, Nebraska, rather than Springfield, Nebraska. As such, the court determined that the order to show cause was not warranted. On appeal, Eric argues the district court abused its discretion in denying his motion. Because we agree, we reverse, and remand for further proceedings.

## BACKGROUND

Eric and Nessa were married in 2013, and one child was born of their marriage. The parties divorced in 2018, and

the decree of dissolution dissolving their marriage awarded the parties joint legal and physical custody of the minor child. At the time of the divorce, Eric and Nessa entered into a marital settlement agreement and a parenting plan. The parenting plan, in relevant part, provides as follows:

**C. REGULAR TIME-SHARING:**

[Minor child] will be with Mom during the school year, except for one night each week from after school until 8 p.m. Dad will give Mom 2 weeks' notice of what night he will exercise that parenting time.

The parents agree to alternate weekends, with Dad having [minor child] two weekends in a row from Friday at 6 p.m. until Sunday at 6 p.m., then Mom having [minor child] the third weekend. On the Sundays when Mom works at night, Dad will have [minor child] until he drops him off for school on Monday morning. The parents shall follow a 2 weekend with dad/1 weekend with mom rotation. This weekend rotation shall resume the first Friday after school resumes with dad commencing the weekend rotation annually.

The parents agree that they will work together to adjust [minor child's] schedule if their time with [minor child] interferes with the work schedule.

Neither parent may make plans for the child during the other parent's parenting time without talking with that parent in advance and obtaining that parent's consent.

. . . .

**K. DECISION MAKING:** The parents will discuss matters concerning the child, such as health and medical, school related problems and decisions, and any behavioral or disciplinary issues that could impact both households.

. . . .

**O. CHANGE OF PARENT'S RESIDENCE:** In the event that one of the parents plan to change his/her residence, that parent shall notify the other parent of

such change of residence. If one of the parents is living or moving to an undisclosed location because of safety concerns, the address or return address shall only include the county and state.

**P. CHANGE OF CHILD'S RESIDENCE:** Both parents shall provide notification to the other if s/he plans to change the residence of the child. Neither parent may move the child outside of the [S]tate of Nebraska without permission of the Court. If intending to move that parent must first:

• Make written application to the Court at least 45 days in advance, including the proposed changes to the parenting time schedule and costs of transportation[;]

• Give notice of the application and hearing to the other parent; and,

• Establish that the move is in the best interest of the child.

On July 28, 2020, Nessa informed Eric that she intended to move with the minor child from Burwell to Springfield. Eric objected to the proposed relocation, and the parties attempted to resolve the matter through mediation. After mediation failed, Nessa proceeded with the move.

On August 11, 2020, Eric filed a motion, with an accompanying affidavit, asking the court to issue an ex parte order that would require Nessa to keep the minor child in the Burwell School District. In his motion, Eric stated that he and Nessa share joint legal and joint physical custody of the minor child and that Nessa made a unilateral decision to move the minor child without his consent. On the same day, Eric filed a motion for order to show cause, with an accompanying affidavit, asking the court to issue an order requiring Nessa to appear and show cause as to why she should not be held in contempt of court. Eric also asked the court to award him attorney fees. Additionally, Eric filed a motion for writ of assistance, requesting the court to direct law enforcement to take custody of the minor child and deliver the minor child to him.

On August 12, 2020, the district court entered a one-page order, denying Eric's motions for an order to show cause and for a writ of assistance. The court found that the parenting plan requires an application to the court and notice of hearing before a child may be moved out of the state, but found "no provision in the Parenting Plan requiring [minor child] to attend school in Burwell." The district court also noted that Nessa was granted custody during the school year except for one night per week that the minor child would spend with Eric. Eric timely appealed, and we moved the matter to our docket.

## ASSIGNMENT OF ERROR

Eric assigns, consolidated, that the district court abused its discretion in denying his motion for an order to show cause.

## STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks reme-dial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.[1]

[2,3] Relocation and child custody determinations are mat-ters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.[2] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly

---

[1] *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018); *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

[2] See, *Korth v. Korth, ante* p. 115, ___ N.W.2d ___ (2021); *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[3]

## ANALYSIS

### Contempt

[4] The power to punish for contempt of court is a power inherent in all courts of general jurisdiction such as the district courts of this state.[4] Under Neb. Rev. Stat. § 25-2121 (Reissue 2016), "[e]very court of record shall have power to punish by fine and imprisonment, or by either, . . . (3) willful disobedience of or resistance willfully offered to any lawful process or order of said court . . . ."

[5-7] Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.[5] A party to an action who fails to obey an order of the court, made for the benefit of the opposing party, is, ordinarily, guilty of a mere civil contempt.[6] As noted by the Nebraska Court of Appeals, in order to prove civil contempt, unless the alleged contemptuous acts occurred within the presence of the judge, or the parties stipulate otherwise, an evidentiary hearing is necessary so that the moving party can offer evidence to demonstrate both that a violation of a court order occurred and that the violation was willful.[7]

In the instant matter, the district court's denial of Eric's motion for an order to show cause deprived Eric of the opportunity to preserve and enforce his rights as a parent with joint legal custody and his rights to parenting time. In doing so, the court incorrectly focused on Nessa's compliance with

---

[3] *Id.*

[4] *State ex rel. Beck v. Frontier Airlines, Inc.*, 174 Neb. 172, 116 N.W.2d 281 (1962).

[5] *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016).

[6] *Rhodes v. Rhodes*, 210 Neb. 373, 314 N.W.2d 271 (1982).

[7] See *deBoer v. deBoer*, 24 Neb. App. 612, 892 N.W.2d 879 (2017).

notification requirements and failed to consider Eric's rights set out in the decree of dissolution of marriage.

## Joint Legal Custody

[8,9] Under the Parenting Act, adopted by the Nebraska Legislature, the concept of child custody encompasses both "physical custody" and "legal custody,"[8] with legal custody focusing entirely on decisionmaking authority.[9] The Parenting Act defines the term "joint legal custody" as meaning "mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health."[10] In other words, joint legal custody is the "joint authority and responsibility for making major decisions regarding the child's welfare,"[11] while sole legal custody essentially establishes that one party will have the final say in such decisions.[12]

[10] Here, the parenting plan, developed by the parties and approved by the court, clearly indicates that the parties were to share joint legal custody of the minor child, and neither party was granted exclusive final decisionmaking authority. As a result, it is undisputed that the parties share mutual authority for making fundamental decisions regarding the minor child's welfare, including choices regarding education, such as where the minor child will attend school. We have classified the decision of where a child will attend school as a fundamental decision.[13]

---

[8] See Neb. Rev. Stat. § 43-2922(7) (Cum. Supp. 2020).

[9] *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

[10] § 43-2922(11).

[11] *Brown v. Brown*, 260 Neb. 954, 961, 621 N.W.2d 70, 77 (2000), quoting *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999) (internal quotation marks omitted).

[12] See § 43-2922(13).

[13] See *State on behalf of Kaaden S., supra* note 9 (stating that father had final say on fundamental decisions regarding child's welfare, such as where he attends school, because he was awarded legal custody of the child).

Over Eric's objection and absent application to the court, Nessa removed the minor child from the Burwell School District and enrolled him into a new school in Springfield. Whether Nessa's unilateral decision to change the child's school is a willful violation of the decree of dissolution of marriage entered by the court is a matter to be considered at an evidentiary hearing where Eric can offer evidence to demonstrate both that a violation of the court order occurred and that the violation was willful.

Thus, we conclude the district court's decision to deny Eric's motion for an order to show cause was an abuse of discretion that unfairly deprived Eric of his rights as a joint legal custodian of the minor child.

## Parenting Time

In denying Eric's motion for an order to show cause, the district court noted that Eric's weekday parenting time with the minor child would be impacted. The Parenting Act defines "parenting time" as "communication or time spent between the child and parent."[14] However, the trial court's analysis went no further in considering the loss of Eric's parenting time and who was responsible for that loss. The court failed to consider the significant interference Nessa's relocation has on Eric's parenting time during the school year.

In the instant case, the distance between Burwell and Springfield is considerable. At oral argument, Nessa conceded that the distance is approximately a 4-hour drive. During the school year, Eric has parenting time one night each week from after school until 8 p.m., in addition to two out of every three weekends. Eric also has parenting time with the minor child from Sunday until Monday morning when Nessa is working at night. Although the parties have agreed to meet halfway to exchange the minor child, Nessa's relocation of the minor child makes Eric's weekday parenting time and his

---

[14] § 43-2922(19).

Sunday overnight parenting time virtually impossible. Nessa conceded at oral argument that since her move, Eric has not been afforded his weekday visits. As a result, the district court abused its discretion in failing to issue an order to show cause as to why Nessa did not willfully violate the decree of dissolution of marriage in regard to Eric's parenting time.

## CONCLUSION

Joint legal custody means Eric and Nessa share mutual decisionmaking authority when it comes to making fundamental decisions regarding the minor child's welfare and education, such as where the child will attend school. Because Nessa's unilateral decision to relocate the minor child ran contrary to the parties' joint legal custody arrangement and because it has deprived Eric of court-ordered parenting time, the district court's denial of Eric's motion for an order to show cause was an abuse of discretion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.