IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE ON BEHALF OF ISAIAH T. V. MELODY T. & ALEX F.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF ISAIAH T., APPELLEE,

V.

MELODY T., APPELLANT, AND ALEX F., APPELLEE.

Filed July 5, 2022.    No. A-21-816.

Appeal from the District Court for Platte County: ROBERT R. STEINKE, Judge. Affirmed.

Craig H. Lane for appellant.

Neal J. Valorz, of Sipple, Hansen, Emerson, Schumacher, Klutman & Valorz, L.L.C., for appellee Alex F.

Breanna D. Anderson-Flaherty, Chief Deputy Platte County Attorney, for appellee State of Nebraska.

MOORE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Melody T. appeals from an order of the district court for Platte County which modified the parenting plan constructed for the benefit of Melody's and Alex F.'s son, Isaiah. In the order, the district court denied Melody's request to award her sole physical custody of Isaiah. Instead, the court ordered that Alex should continue to maintain sole custody. The district court did, however, modify the parenting plan to award Melody with increased parenting time and to order her to pay child support to Alex.

Melody appeals from the district court's modification order. On appeal, she asserts that the court abused its discretion in finding that there was no material change in circumstances which

- 1 -

warranted modifying the parenting plan to award her sole physical custody of Isaiah. For the reasons set forth herein, we affirm the decision of the district court.

BACKGROUND

Melody and Alex are the parents of Isaiah who, at the time of trial was 13 years old. While the parties were never married, they were in a romantic relationship for a period of time. In August 2008, the district court entered an order establishing Alex's paternity and ordering him to pay child support in the amount of $50 per month. The August 2008 order did not include any directive regarding custody of Isaiah or parenting time. As such, in June 2009, Alex filed a motion to modify the August 2008 order so that custody and parenting time could be addressed. In the motion, Alex requested that the parties be awarded joint legal custody and that Melody be awarded sole physical custody subject to his parenting time.

In October 2010, the district court entered an order addressing custody and parenting time. Pursuant to this order, Melody and Alex were awarded joint legal custody of Isaiah. Melody was awarded sole physical custody, and Alex was awarded parenting time every other weekend, one overnight per week, and for six weeks during the summer. Alex's child support obligation was increased to $200 per month. Melody did not appear at the modification trial which resulted in the October 2010 order.

Two months later, in December 2010, Alex filed another complaint to modify. In this complaint, Alex asked that he be awarded sole legal and physical custody of Isaiah. Alex alleged that Melody had moved away from Nebraska with Isaiah and had not notified Alex of her whereabouts. Alex indicated that Melody was intentionally keeping Isaiah from him and that he had not had any contact with Isaiah since August 2010.

In an order entered on February 16, 2011, the district court awarded Alex temporary physical and legal custody of Isaiah pending a hearing on his complaint to modify. Melody was permitted only supervised visitation with Isaiah. Notably, Melody did not attend or participate in the hearing regarding the temporary custody order. Despite the temporary order being entered in February 2011, Alex did not obtain physical custody of Isaiah until August of that year, when Melody and Isaiah were finally located.

In March 2012, the district court entered an order modifying the prior custody order. Alex was awarded permanent physical and legal custody of Isaiah. Melody was awarded supervised parenting time with Isaiah every other Sunday from 10 a.m. to 4 p.m. through October. Beginning in November, Melody was awarded unsupervised parenting time with Isaiah every other weekend. Given her financial circumstances, she was not ordered to pay child support.

In August 2019, more than 7 years after the previous custody order was entered, Melody filed a complaint to modify. In the complaint, Melody alleged that material changes in circumstances had occurred which warranted modifying the prior custody order by awarding her sole physical custody of Isaiah. According to Melody, such material changes in circumstances included, that Alex refuses to appropriately communicate with her regarding Isaiah; Alex has not properly cared for Isaiah; Alex drinks excessive amounts of alcohol in the presence of Isaiah; and Alex uses inappropriate language in the presence of Isaiah. Melody asked that in the event the court does not award her sole physical custody of Isaiah, that the prior custody order be modified to grant her "extensive and liberal additional rights of visitation or parenting time."

Alex filed an answer and a "cross-application." In this pleading, Alex generally denied that any material change in circumstances had occurred which would warrant a change to the prior custody order. In his cross-application, Alex requested that Melody be ordered to begin paying child support.

A modification trial was held on June 30, 2021. At the trial Melody and Alex each testified and called witnesses on their behalf. In addition, Isaiah testified in chambers with no one but the district court judge and the parties' attorneys present.

At the time of his testimony, Isaiah was 13 years old and preparing to start 8th grade at Columbus Middle School. Isaiah testified that he was a pretty good student who enjoyed school and who had a good group of friends. When asked, Isaiah indicated that while he gets along well with both Melody and Alex, he would prefer to live with Melody. Isaiah very generally indicated that there was not much for him to do in Columbus, Nebraska, where he lives with Alex, but believed there was more to do in Sioux City, Iowa, where Melody lives. Isaiah explained that at Melody's home, he is able to spend more time with his older half-brothers and with his extended family. He also does more "stuff" at Melody's home, including, going to movies and playing outside. He indicated that he does have a few friends in the Sioux City area, but when pressed, he could not recall any of those friend's names.

Isaiah testified that at Alex's home, he and Alex do share a hobby of collecting and caring for praying mantises. However, Isaiah indicated that he did not like to stay at home alone while Alex was at work in the evenings, he felt that Alex at times had drank to excess in his presence, and he had heard Alex use an inappropriate racial slur which made Isaiah, who is biracial, feel "weird." Isaiah also expressed some discomfort regarding the amount that Alex and Alex's mother, who lives with them, argue with one another. Isaiah also expressed feeling upset that Alex only recently purchased him what he believed to be an appropriately sized bed.

Upon questioning, Isaiah indicated that while Alex has never discussed the modification proceedings with him, Melody has told him more than once that after the proceedings, he is going to come live with her. Melody also instructed Isaiah to take pictures of alcohol bottles and guns which were present in Alex's apartment so that Melody could use those pictures at trial. Isaiah did testify that Melody instructed him to tell the court the truth about his preferences.

Melody testified at the modification trial that she was 48 years of age and currently resides in a three bedroom apartment in Sioux City, Iowa. Isaiah has his own bedroom in the apartment. Also living in the apartment for the past 8 months is one of Melody's older sons, Elijah, age 21, and Elijah's girlfriend. Melody has one other son, Shelton, age 26 who lives in Omaha. Melody testified that Isaiah loves his two half-brothers and they all spend a great deal of time together during her parenting time. Isaiah also spends time with his extended family, including his grandmother and his cousins, when he is with Melody. Melody testified that she refers to her apartment as Isaiah's "home" and that she has told him he will be coming to live at home soon.

At the time of the trial, Melody had worked for a food distribution company doing quality assurance for a couple of months. She works Mondays through Saturdays and some Sundays from 10:30 p.m. to 6:53 a.m. Melody explained that, as a result of her schedule, she would be available to get Isaiah ready for school when she got off of work in the mornings and would be home in the afternoons and evenings when Isaiah returned home from school. She also explained that at night when she was at work, her son Elijah would be at the apartment with Isaiah. In the event Elijah

could not be there, other family members would stay with Isaiah. Melody testified that she plans to stay at her current place of employment for the foreseeable future, as it offers good benefits and opportunities for promotion.

During her testimony, Melody admitted that she has not had a valid driver's license for the past few months because of unpaid traffic citations. She admitted that her license has been revoked on one prior occasion as well. While Melody is working to have her license reinstated, she indicated that she has driven to pick up Isaiah for her parenting time without a valid driver's license.

Melody also admitted during her testimony that she has called law enforcement and the Department of Health and Human Services multiple times regarding Alex's parenting and regarding concerns for Isaiah's well-being. She explained that, for example, she has called law enforcement when she has called to speak to Isaiah on the phone and was unable to talk with him. Such reports have occurred as recently as a few months prior to the modification trial. Melody testified that she believes that she has only ever reported legitimate concerns to the authorities. However, she also admitted that no action had ever been taken against Alex as a result of her reports.

Melody testified regarding multiple concerns she has with Alex's parenting of Isaiah. First, she believes that she has only limited communication with Alex regarding Isaiah. She indicated that she is never made aware of things happening in Isaiah's life such as doctor's appointments or school events. In fact, Melody explained that Alex did not notify her when Isaiah was suspended from school for hitting another student. When Alex does communicate with her, Melody indicated that he used profanity, including racially charged language. Melody is African-American. Melody offered into evidence a few text messages sent between herself and Alex in November 2020 where Alex does, in fact, call her names and becomes upset with her.

Melody also explained that when Isaiah was younger, Alex did not facilitate her phone calls with Isaiah. Melody had to purchase Isaiah his own cellular telephone so that she could speak to him during the week when he is with Alex. Melody believes that she is the only one who ever buys Alex any new clothes.

Melody's next concern with Alex's parenting of Isaiah is Alex's work schedule. Melody testified that Alex works a split shift at a restaurant which requires him to work from 5 p.m. to 9 or 10 p.m. on most evenings. When Alex is at work, Isaiah is at home alone. Melody indicated that while she believes Isaiah to be a responsible, well-behaved 13 year old, she believes that he is too young to be left alone for such a long period of time on a regular basis. Melody testified to one particular occasion when Isaiah became scared when he was home alone at Alex's apartment. In her opinion, Alex did not take the situation seriously when Melody alerted him to it. Melody also testified that even when Alex is at home, it is Alex's mother, who is really Isaiah's primary care giver.

Melody is also concerned that Alex drinks heavily and to the point of intoxication on a regular basis in Isaiah's presence. Melody offered into evidence pictures she instructed Isaiah to take at Alex's apartment while he was at work one evening. One such picture depicts six bottles of beer in Alex's refrigerator. Another picture depicts some empty beer bottles lined up on a countertop and another picture depicts a bottle of hard alcohol. During her testimony, Melody indicated that she believes Alex has a serious problem with alcohol which has not changed since

the entry of the last custody order. In fact, she testified that she kept Isaiah from Alex when she had custody because she believed Alex to be drinking too much.

Melody also had Isaiah take pictures of firearms that are present in Alex's bedroom. Melody testified that she is concerned that Alex leaves these firearms out in the open in his bedroom which Isaiah has free access to.

Melody asked the court to award her with primary physical custody of Isaiah. She believes that she is the more appropriate parent for Isaiah because she provides him with whatever he needs and she is simply a better caregiver than Alex. Melody explained that she and Isaiah spend quality time together and he regularly speaks with her about his concerns. She also believes she can provide him with a safer home environment because she does not drink alcohol to excess and does not own guns. Melody wants to enroll Isaiah in extracurricular activities, specifically boxing, as he has never participated in such activities at Alex's home. Melody testified that if she is not awarded primary physical custody of Isaiah, she would like to be awarded "extensive parenting time."

In addition to her own testimony, Melody also offered the testimony of some of her family members, including her two older sons, Elijah and Shelton; her niece; and Shelton's girlfriend, who lives with Shelton in Omaha. Each of these witnesses attested to the closeness of their family unit and the amount of time the family spends doing activities, especially when Isaiah is present at Melody's home. Each believed Melody to be a good mother to Isaiah and to have a strong bond with him. Elijah and Shelton testified that when Isaiah is with Melody, someone is always with him at night when Melody goes to work. In addition, Elijah and Melody's niece testified that Isaiah has explicitly told them that he wants to live with Melody on a permanent basis.

Alex, 33 years of age at the time of trial, lives in an apartment in Columbus, Nebraska. This is the same apartment that Alex has lived in his whole life. Residing in the apartment with Alex are Isaiah and Alex's mother, Jane. While Isaiah has always had his own bedroom in the apartment, Alex testified that up until about 6 months prior to trial, Isaiah slept with Jane in her bedroom because that was Isaiah's preference. Alex testified that there was a single bed in Isaiah's room previously which had recently been replaced with a full sized bed. Isaiah attends a public school in Columbus, and has been in the same school system his entire life. Isaiah's report cards demonstrated that most of his grades were A's, with some B's, and an occasional C. Alex indicated that Isaiah has never required much discipline or correction because he is generally well-behaved.

Alex has worked at a pizza restaurant owned by an extended family member since he was 16 years old. He works the same schedule that he did when he gained custody of Isaiah in August 2011. His hours are 11 a.m. to 2 p.m. and 4:30 to 9 or 10 p.m. every Monday, Wednesday, Thursday, and Sunday and every other Friday and Saturday. On evenings when both Alex and Jane are at work, Isaiah stays in the apartment by himself. When Isaiah was younger, he stayed with extended family on such evenings. Alex testified that Isaiah does not mind staying at home by himself, and that he believes Isaiah to be capable of doing so. On the one occasion when Isaiah did become scared at home, Alex sent a restaurant employee to pick Isaiah up and bring him to the restaurant. Once he was settled down, an extended family member came and picked up Isaiah.

Alex testified that Isaiah is his top priority and that he has been Isaiah's primary caregiver for 10 years, which equates to two-thirds of Isaiah's life. Alex does sometimes rely on his mother to help care for Isaiah and admitted that Jane does most of the cooking and cleaning. Alex

schedules and attends Isaiah's annual appointments with his pediatrician and regularly takes Isaiah to dental appointments. Alex also attends Isaiah's parent teacher conferences. Because Melody has not been required to pay child support, Alex is financially responsible for all of Isaiah's needs. Alex admitted that Melody does provide clothing to Isaiah, but denied that she provides the majority of his clothing. Alex indicated a willingness to enroll Isaiah in boxing lessons and suggested that Isaiah do so, but indicated that Isaiah has never before shown an interest in playing sports. Together, Alex and Isaiah watch movies, fish, play outdoors, play video games, and raise praying mantises. Isaiah is also able to spend time with extended family in Columbus. Isaiah has never told Alex he wished to reside with Melody.

Alex admitted that he and Melody do not get along. However, Alex indicated that the problems in their relationship existed 10 years ago at the time Alex was awarded custody of Isaiah. Alex believes that Melody is the root of the problems in their relationship. Since Alex was awarded custody of Isaiah, Melody has attempted to unilaterally change the parenting plan by regularly arriving an hour or two late to drop off Isaiah after her visitation time. Melody has also at the last minute changed the location where she would drop Isaiah off. Alex testified that Melody has frequently called law enforcement and the Department of Health and Human Services when she cannot reach Isaiah on the phone. Alex indicated that no action by the authorities has ever resulted from Melody's reports. He has never been cited by law enforcement nor has Isaiah ever been removed from his care. Alex did admit that because of Melody's behaviors, he has "los[t his] cool" with her during arguments. Alex testified he was not proud of his actions in this regard.

Ultimately, Alex testified that he does not believe Melody to be a fit parent for Isaiah. He believes that Melody makes bad decisions, including hiding Isaiah from him when she had custody. Alex explained that contrary to Melody's actions, he has never interfered with Melody's parenting time and has tried to be flexible in providing her with additional time. Alex testified that he wishes to retain sole custody of Isaiah.

Alex believed himself to be a fit parent for Isaiah. He denied having a drinking problem as Melody suggested. He testified that he drinks from two to five beers a day but does not regularly drink to the point of intoxication. He also indicated that the majority of his drinking occurs late at night after he gets home from work and Isaiah is in bed. He also noted that at that time of day, Jane is also home. However, Alex did admit to having previously been intoxicated in Isaiah's presence. He also admitted to having convictions for driving under the influence which occurred prior to the time when he was granted full custody of Isaiah.

Alex did not believe that the guns he legally owned and kept in his unlocked bedroom posed a danger to Isaiah. Alex explained that he owned eight guns, including semiautomatic rifles, a shot gun, and a hand gun. The guns are not loaded, but the ammunition is not kept locked away. Alex has taught Isaiah about the guns and about gun safety. To Alex's knowledge Isaiah has not gone into the room and handled any of the guns. He testified that Isaiah at one point would go target shooting with Alex, but has shown little interest in the guns in the last couple of years. The only time he is aware of Isaiah entering the room with a focus on the guns was when he entered at Melody's request to photograph the guns. He described Isaiah as a very responsible child. Alex admitted that he has used a racial slur, but acknowledged that it was not acceptable to do so and indicated he has never used the word around Isaiah.

Alex's mother, Jane, testified on his behalf. Jane testified that Alex and Isaiah are very close and that Alex loves Isaiah very much. She also indicated that she enjoys a close relationship with Isaiah. Jane described Isaiah as a funny, smart, and shy boy who is well-behaved. Jane assists Alex in caring for Isaiah by cooking meals, cleaning, and doing laundry. However, because Jane works Monday through Friday from 2 to 10 p.m., there are evenings that neither Jane nor Alex is home with Isaiah. Jane indicated that she is not concerned about Alex's drinking, nor has she heard him use a racial slur. She noted that she is normally home in the late evening when Alex drinks. Jane did admit that she had encouraged Alex to purchase a gun safe. However, she testified that Isaiah is a very responsible child and has shown little interest in Alex's guns.

Under the parenting plan, Alex is required to pick up Isaiah from Melody at the end of her visitation periods. Because those periods generally end on Sundays, and Alex works every Sunday, Jane has been the primary person to drive from Columbus to Sioux City. She kept a log of issues that have arisen with exchanges since the prior order of modification. The log was received into evidence. It details over 120 incidents. Most of the incidents demonstrate that Isaiah was brought to the exchange location late ranging in delays of 30 minutes to several hours. However, there are also incidents detailed wherein Melody informed Jane that the pickup point would be changed, even to a different city, and times where Melody refused to return Isaiah for a period of days and police assistance for his return was utilized. Also received was a log of incidents of other types of difficulties. This included numerous incidents where Melody called authorities to check on Isaiah, where Isaiah reported Melody telling him that he would soon be living with her, and where Isaiah reported Melody making disparaging remarks about Alex.

On September 9, 2021, the district court entered an order of modification. The court found that Melody had failed to prove a material change in circumstances which would warrant awarding Melody sole physical custody of Isaiah. The court noted that "[n]either Alex nor Melody are perfect parents. They have both on occasion engaged in unbecoming behavior. They have occasionally struggled in their ability to appropriately communicate with one another in a respectful manner."

The court then concluded:

Although, as one would expect, changes have occurred since the 2012 custody order was entered, the Court cannot conclude, given the entirety of this record, that such changes are material in nature satisfying a change of Isaiah's custody. Being unable to conclude Melody has met her burden of proof to establish a material change of circumstances justifying a change of Isaiah's custody, the Court finds that Melody's complaint for modification, to the extent it seeks a change of Isaiah's primary physical custody, is denied.

In reaching this conclusion, the court specifically noted that while it had considered Isaiah's testimony about his preference to live with Melody, it did not view his wishes as controlling, in part because "Isaiah was somewhat vague in setting forth the reasons for his preference." The court exhaustively addressed the issues with respect to Alex's use of alcohol, the presence of guns in the apartment and Isaiah's ability to access them, and the use of racially charged language. The court further noted Melody's continued pattern of noncompliance with court orders regarding parenting time and her willingness to involve Isaiah in the litigation. Finally, the court noted that it was

considering the credibility of the parties in reaching its decision that no material change of circumstance existed which would support a change of custody.

The court did find that there was a material change in circumstances which warranted increasing Melody's parenting time with Isaiah: "In this regard, there can be little doubt Isaiah enjoys a good relationship with his mother and her extended family, in particular his half-brothers. They are a close-knit, good family. Isaiah enjoys spending time with them." The court increased Melody's parenting time such that in addition to the parenting time awarded to her under the previous custody order, she is to have six consecutive weeks of summer parenting time and a week of parenting time corresponding to Isaiah's spring break from school.

Finally, the court granted Alex's request to order Melody to pay child support. Melody was ordered to pay $195 in child support per month.

Melody appeals from the district court's modification order.

ASSIGNMENT OF ERROR

Melody's sole assignment of error on appeal is that the district court erred in failing to find a material change in circumstances which warranted modifying the parenting plan to award her sole physical custody of Isaiah.

STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record, and will be affirmed absent an abuse of discretion. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012). However, where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020).

ANALYSIS

On appeal, Melody asserts that the district court erred when it found that there had not been a material change in circumstances which would warrant a change to Isaiah's physical custody. Melody asserts that Alex's excessive drinking, the presence of guns in his home, and his use of racial slurs each constitutes a material change in circumstances which would warrant awarding her custody of Isaiah. Based upon our standard of review, we find no abuse of discretion in the district court's finding that there had not been a material change in circumstances which would warrant a change to Isaiah's physical custody.

In a child custody modification action the party seeking modification must demonstrate first that a material change in circumstances has occurred after the entry of the previous custody

order which affects the best interests of the child and that it is in the child's best interests that custody be changed. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. *Id.*

The child's best interests require a parenting arrangement and plan which provides for a child's safety, emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923 (Reissue 2016). Moreover, § 43-2923 sets forth a non-exhaustive list of factors to be considered in determining the best interests of a child in regard to custody. Such factors include the relationship of the minor child with each parent, the desires of the minor child, the general health and well-being of the minor child, and credible evidence of abuse inflicted on the child by any family or household member.

As we discussed above, the district court found that while there had been changes to the parties' circumstances since Alex was granted custody of Isaiah ten years ago, none of the changes had been material. While issues were raised that are certainly concerning, we can find no abuse of discretion in the district court's decision.

Alex did admit that he regularly consumes alcoholic beverages. However, he denied having a serious drinking problem and denied regularly drinking to the point of intoxication. Moreover, Melody indicated that she was aware of Alex's drinking prior to him receiving custody of Isaiah ten years ago. As noted by the district court, there was no evidence that Alex's drinking has adversely affected Isaiah or Alex's care for Isaiah. It appears from Alex's testimony that he typically drinks alcohol after he gets off of work, which is also after Isaiah is in bed and while Jane is home. Isaiah did not testify to any negative effects from Alex's drinking other than that Alex sometimes talks differently after a few drinks. Essentially, there was nothing in our record to indicate that Alex's drinking is a change of circumstances from ten years ago, let alone a material change in circumstances.

Alex's ownership of guns and his decision not to keep them in a locked gun cabinet presents a much more difficult question. However, Isaiah, Jane, and Alex testified that Isaiah does not have any interest in playing with or being near the guns. In addition, Alex testified that he has taught Isaiah about gun safety and believed Isaiah to be a responsible and well-behaved 13 year old. While we find it very troubling that Alex has not found a way to at minimum keep the ammunition for his guns in a locked container which is not accessible to Isaiah, we cannot say that the district court abused its discretion by failing to find that the presence of the guns constitutes a material change in circumstances. The district court had the opportunity to see and hear the witnesses. Every witness, including Melody, expressed how well behaved, obedient, and responsible Isaiah is. The court had an opportunity to observe Isaiah first hand and apparently concurred with the assessments made by his parents and grandmother. As such, given our standard of review, we cannot find that the court abused its discretion.

We do note, as did the district court, that Melody's decision to involve Isaiah in these proceedings by asking him to photograph the guns and the contents of Alex's refrigerator is concerning. The evidence demonstrates that Melody has a long history of noncompliance with

court orders and with involving Isaiah in discussions about the case and where he is going to live. These issues have not changed since the 2012 modification order was entered and remain troublesome.

Finally, we also find concerning Alex's admitted use of a racial slur, especially because Isaiah is biracial and Melody is African-American. However, there was conflicting evidence regarding whether Alex had ever used such language in Isaiah's presence. Isaiah testified that he had heard Alex use the racial slur and that it made him feel uncomfortable. To the contrary, Alex adamantly denied using a racial slur in Isaiah's presence and indicated that he knew using this language was inappropriate. Ultimately, we cannot say that Alex's use of such language constitutes a material change in circumstances. We cannot and do not condone the use of any racially charged language, but we must also weigh Alex's behavior in this regard with his actions throughout the ten years he has had sole custody of Isaiah. On the whole, the evidence revealed that Alex has been a good caregiver and provider for Isaiah. Isaiah has grown into a responsible, smart, friendly, and well-adapted child. He is achieving at a high level in school. Moreover, we must also consider Melody's behavior as both a custodial and non-custodial parent. Evidence presented at the modification trial revealed that throughout Isaiah's life, Melody has consistently and repeatedly attempted to frustrate Alex's relationship with Isaiah and has refused to comply with court orders.

Because we find that Melody has failed to demonstrate that any material change in circumstances has occurred since the entry of the 2012 modification order which would warrant a change to Isaiah's physical custody, we find no abuse of discretion in the district court's decision to deny her request to modify the order to award her custody. We affirm the district court's order which essentially grants Alex with continuing sole physical custody of Isaiah.

CONCLUSION

Upon our de novo review of the record, we find no abuse of discretion in the district court's denial of Melody's request to modify the prior custody order to award her sole physical custody of Isaiah. We affirm the court's order of modification in its entirety.

AFFIRMED.