IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CHAN V. WABUKE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SUNNY CHAN, APPELLEE,

V.

HOPE WABUKE, APPELLANT.

Filed March 21, 2023.    No. A-22-519.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Amie C. Martinez and Megan M. Zobel, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Nancy R. Wynner, of Olson Zalewski Wynner, L.L.P., for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Hope Wabuke appeals from an order of the district court for Lancaster County awarding Sunny Chan joint physical and legal custody of their minor son, Aslan. As relevant to this appeal, the court significantly increased Sunny's parenting time from weekend visitations to a week on, week off schedule. The court also modified the parties' joint legal custody arrangement to award Sunny the "final say" for decisions relating to Aslan's education if the parties were unable to agree after mediation. Hope alleges that the district court abused its discretion in significantly increasing Sunny's parenting time and in changing the legal custody arrangement. Upon our review, we affirm the district court's order.

- 1 -

BACKGROUND

Sunny and Hope, who were never married, are the parents to Aslan, who was born in California in 2012. The couple separated nine months after Aslan's birth. For the first few years following their separation, Sunny and Hope followed an informal parenting plan that allowed Sunny to see Aslan at Hope's discretion. In 2016, Hope was offered the opportunity to become a tenure-track professor at the University of Nebraska-Lincoln. Sunny petitioned a California court to establish his paternity and a parenting plan in light of Hope's plan to move with Aslan. The California court noted that Hope had been Aslan's primary caretaker and permitted her to move to Nebraska with Aslan. The court awarded Sunny up to three weekends per month of visitation in Nebraska as well as one weekend every two months of visitation in California. Finally, the California court ordered the parents to have joint legal custody, which it defined as the parents sharing "the right and responsibility to make decisions relating to the health, education and welfare of the minor child."

After Hope and Aslan's move to Nebraska, Sunny and Hope followed the California court's parenting plan for several years. Sunny visited Aslan in Nebraska as much as he could financially afford which was generally about once or twice a month. While in Nebraska, Sunny would obtain a hotel suite with a kitchen so he could cook meals for himself and Aslan. He also rented a storage facility locally where he kept the cookware and toys he had for Aslan so there would be consistency with his visits. In 2019, Sunny made the decision to move to Nebraska to be closer to Aslan.

In July 2021, Sunny filed a complaint to modify custody, visitation, and child support. In his motion, Sunny alleged that since he moved to Nebraska, the California order no longer served the child's best interests. Sunny requested joint legal and physical custody of Aslan. Hope filed an answer and cross-complaint to modify requesting that the court dismiss Sunny's complaint. She further requested the court allow her to temporarily relocate with Aslan to Scotland for a period of one year. A trial was held over the course of two days on February 4 and 25, 2022.

At trial, Sunny and Hope testified regarding several issues including Aslan's health, education, and time spent with each of his parents. Several exhibits were admitted including Aslan's medical records and numerous communications between Sunny and Hope through a messaging app. The testimony of Aslan's current doctor and therapist was also received.

Sunny and Hope have vastly different views regarding Aslan's anxiety. According to Aslan's medical records, each parent was provided Screen for Child Anxiety Related Disorders (SCARED) forms to complete with regard to Aslan. The form completed by Hope reflected a very high score raising concerns of anxiety associated with separation and school. Sunny's form reflected a very low score and gave no indication of an anxiety disorder. Aslan's pediatrician at the time, Dr. Heather Dews reported that the major discrepancies in reporting from Sunny and Hope made it difficult to diagnose Aslan and make improvements.

Hope testified that she began to notice anxiety symptoms in Aslan shortly after Sunny moved to Nebraska. According to Hope, in the lead up to weekend visits with Sunny, Aslan would throw up, shake, and cling to her for comfort. She also reported that there was a period of time during which Aslan was wetting the bed. Hope took Aslan to Francisca Peterson, a therapist with the Lincoln Psychiatric Group, in February 2020. Peterson diagnosed Aslan with adjustment

disorder with anxiety and depression. Hope reported to Peterson that the main stressor in Aslan's life was Sunny's move to Nebraska. Peterson testified that she implemented a variety of strategies designed to address the list of symptoms reported to her by Hope. Her goal was to return Aslan to the comfort level he had prior to the stressor being introduced as well as coping methods for when other stressors or changes occur. Peterson had observed a good relationship between Aslan and his mother.

Sunny testified that he acknowledges that Aslan experiences anxiety but has never seen it to the intensity described by Hope. He denied any tension between him and Aslan. Sunny described Aslan as relaxed and happy when they are together. Sunny stated he reached out to attend a therapy session with Aslan and Peterson, but Peterson declined. Peterson testified that she would not feel comfortable observing Aslan with Sunny the way she had observed Aslan with Hope because it would be a conflict of interest since Hope was the one who brought Aslan in to see her. Peterson stated that Aslan does not discuss the time he spends with Sunny during their sessions, and Aslan has never disclosed that he is afraid of his father despite Hope reporting as such. However, Peterson also testified that in one of Aslan's sessions which occurred after the first day of trial, but before the day she testified, Aslan for the first time stated that he only wanted to have two days of visitation with his father at a time and that seven would be too much. Since Peterson was not available, Sunny stated he had found a therapist to do child-parent therapy involving him and Aslan, but Hope would not allow Aslan to attend.

Sunny also detailed the attempts he made to engage Hope in co-parenting therapy to improve their communication. Sunny stated that he had found a therapist for him and Hope, but after five months, Hope dismissed the therapist without informing Sunny. Sunny and Hope found a second therapist but after a short while, that therapist determined they needed a service that was not within her skillset. They attempted to meet with a third therapist. However, this therapist was again unilaterally rejected by Hope.

In addition to Aslan's mental health, both parents testified regarding Aslan's physical health. According to Aslan's medical records, he has asthma and allergies. Hope chose Dews as Aslan's primary pediatrician when they first moved to Nebraska. Sunny testified that Hope made this decision without consulting him. Aslan's medical records indicate "father not involved" as reported by Hope. However, Sunny reached out to Dews in August 2020 for an update on Aslan, which Dews described in her records as "positive and collaborative without any negative connotations towards Mom." Dews also documented that Hope expressed concern that the relayed conversation with Sunny was not consistent with Sunny's actual day to day participation and involvement with Aslan's needs. In her notes following Aslan's last visit to her in March 2021, Dews noted her recommendation that Aslan return to in-person school in the fall of 2021. She also noted that she discussed the need for Hope to demonstrate appropriate modeling regarding tolerance of visitation "as Mom also very uncomfortable with extended weekend visits."

In April 2021, Hope unilaterally changed Aslan's doctor to Dr. Boshra Rida, a general family physician. Rida testified by deposition. Rida saw Aslan three time between April and December 2021. She characterized Aslan's asthma as "exercise-induced" and mild. She indicated that Aslan should only use his inhaler as needed. Hope testified that Aslan needed to use his inhaler daily. Contrary to Rida's testimony, Hope testified that Rida wanted Aslan to use his Albuterol inhaler daily, but his rescue inhaler only if in distress. According to Rida, Hope reported periods

of time that Aslan had not needed to use an inhaler for up to two months. Rida also stated that during an appointment with Sunny present, Aslan denied he had anxiety, trouble focusing, or headaches. At that appointment, Aslan reported enjoying his weekends with his dad. Rida described Aslan's physical health as appropriate for his age.

Based on her assessment of Aslan's health issues and anxiety, Hope decided to enroll Aslan in homeschooling after Aslan's school went remote in response to the Covid-19 pandemic. According to Sunny, Hope made this decision without consulting him, and he only learned of the change after contacting Aslan's school. Hope has served as Aslan's homeschool teacher. Both parents agreed that Aslan has excelled while in homeschool, testing in the 98th and 99th percentiles for his education level. However, Sunny indicated that he wished for Aslan to return to school out of concern for Aslan's social skills and community building. Sunny testified that he had discussed private school with Hope at their last parent teacher conference so that Aslan could still enjoy a smaller classroom environment. As noted, in March 2021, Dews also recommended that Aslan return to in-person school. At the time of trial, Hope indicated her preference to homeschool Aslan for one to two more years.

Sunny and Hope also testified regarding the time each of them spends with Aslan. Since he moved to Nebraska, Sunny has repeatedly requested to spend more time with Aslan only to be rejected by Hope. Hope denied Sunny's request to take Aslan on summer vacations in both 2020 and 2021 in violation of the California court order that remained in place at the time. Additionally, Hope would make changes to Sunny's regular weekend visitations. Hope cited Aslan's anxiety as the reason for her reducing the visitation times. Hope testified that she was not comfortable leaving Aslan with Sunny for long periods of time because she felt Sunny was not taking Aslan's health concerns, namely his anxiety, seriously. Sunny stated he and Aslan enjoy their time together and described exercises they do together, such as meditation, to address Aslan's anxiety when needed. Sunny requested that the court grant him equal parenting time with Hope.

In her "cross-complaint", Hope requested that the court grant her permission to take Aslan to Scotland for one year. Hope received a Fullbright scholarship in early 2020 which requires the recipient to perform a year of research in an international location. Hope did not inform Sunny of her award directly. Sunny learned of it by way of Hope's answer and cross-complaint filed in August 2021. Hope testified the Fullbright scholarship is one of the top honors that an academic researcher can receive. Hope stated that accepting the Fullbright scholarship would help her achieve tenured status at the University, and turning it down would be a significant detriment to her career. Hope was able to defer her acceptance for one year due to the Covid-19 pandemic. Hope explained that she did not want to tell Sunny about the move until she had set dates. Sunny shared his concerns that he would lose his relationship with his son, that Aslan would lose his routine, and that Aslan would risk his health traveling abroad during the pandemic if he moved to Scotland. Hope on the other hand believed the move to Scotland would be an enriching experience for Aslan to explore other cultures.

In an order dated June 10, 2022, the district court denied Hope's request to relocate Aslan to Scotland for one year. The court granted Sunny's request for joint physical custody with a week on, week off parenting time schedule. The court also ordered the parties to continue to have joint legal custody but made the following order regarding Aslan's education:

However, the court finds it is in Aslan's best interest that should the parents be unable to agree as to decisions impacting Aslan's education, they shall participate in mediation and equally share the expense of such. However, should the parents be unable to reach an agreement with the help of mediation, father shall have the final say in decisions affecting Aslan's education.

In the parenting plan, the court spoke to the issue of education further. The court found that the best interests of the child included having normal social interactions with other children his age as well as teachers and school administrators. To that end, the court found that Aslan should, beginning in the fall of 2022, begin attending either a private school or Lincoln Public Schools full-time. If the parents could not agree on a school, Sunny was given "final say" in decisions affecting Aslan's education.

In determining the best interests of Aslan, the court found that Aslan has a strong bond with both parents. However, the court found Hope's testimony regarding her claim that Aslan suffers from anxiety caused by time spent with Sunny not credible. The court found that Sunny was not causing or contributing to Aslan's anxiety. In fact, the court determined that Hope's "statements and attitude toward father and her unwillingness to co-parent" were more likely the contributing factors for Aslan's anxiety.

Further, the court dismissed the testimony from Peterson. Specifically, the court discredited Peterson's testimony regarding Aslan's sudden communication about visitation time with his father following the first hearing date, stating "[i]t is clear mother discussed what took place on the first day of trial with Aslan, and that she played a role in Aslan's subsequent discussion with Peterson." More generally, the court rejected Peterson's opinions because Peterson had no contact with Sunny and even refused his efforts to engage in Aslan's therapy despite her interactions with Hope and numerous observations of Hope and Aslan together.

Finally, in denying Hope's request to relocate to Scotland for one year, the court found that Aslan's quality of life would not be enhanced by such a move. The court noted that "[m]other has refused father's requests for more time with Aslan and actively taken steps to interfere with Aslan's relationship with his father." The court opined that if Hope was allowed to remove Aslan internationally for one year, this behavior and interference would only be exacerbated. Sunny was found to have the ability to act in Aslan's best interests. As a result, the court determined that it was in Aslan's best interest to have more time with his father. The court set out a week on, week off parenting plan for any period that the parties both reside in Nebraska. The court also set out a parenting plan for the parties to follow in the event Hope decided to temporarily move to Scotland to conduct her research.

Hope appeals.

## ASSIGNMENTS OF ERROR

Hope assigns that the district court abused its discretion in (1) modifying the parties' legal custody arrangement to give Sunny final say as to Aslan's education and (2) awarding Sunny joint physical custody of Aslan which increased Sunny's parenting time to a 50/50 arrangement.

## STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record and will be affirmed absent an abuse of discretion. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other. *Id.*

## ANALYSIS

*Decisions Regarding Aslan's Education.*

Hope argues that the district court abused its discretion in awarding Sunny final say as to Aslan's education because Sunny did not request final decision making authority in his complaint and the evidence does not support the court's order. In her brief, Hope points to the large amount of evidence showing that Hope was actively involved in Aslan's education, while Sunny was not. In contrast, Sunny argues that the court properly found that Sunny having final say in Aslan's education is in the child's best interests.

First, we must clarify the district court's order regarding Aslan's education. First, the court found that Aslan was required to return to a school setting beginning in the fall of 2022. Next, the district court order reads that "should the parents be unable to agree as to decisions impacting Aslan's education, they shall participate in mediation." Only in the event the parties have failed to reach an agreement through mediation does the court grant Sunny the ability to make a final decision. The district court encouraged mutual decision making through communication and mediation. So although Sunny was awarded final say as to Aslan's education, the court order first requires Hope and Sunny to be at an impasse after making a significant effort to reach agreement.

The court's decision is supported by the record. Hope and Sunny expressed opposing views regarding whether Aslan should continue to be homeschooled. The court resolved that issue in its parenting plan while recognizing that further disagreements might exist as to what particular school Aslan is enrolled in. Additionally, the evidence showed that Hope had a long history of making unilateral decisions regarding Aslan and not informing Sunny even after the decision is made. This included the decision to remove Aslan from public school and homeschool him. Sunny only learned of the change in Aslan's education when the school informed him that Aslan was no longer enrolled there. Despite the California court order granting Sunny and Hope joint legal custody, Hope actively excluded Sunny from these decisions. Yet, Sunny still put in effort to be involved in his son's education. He regularly reached out to Hope for progress reports and attended parent teacher conferences with Hope. When Dews recommended that Aslan return to in-person school in the fall of 2021, Sunny spoke to Hope about finding the right school for Aslan to succeed. However, Hope was hesitant to cease homeschooling. The court rightly recognized that if meaningful communication was to take place regarding decisions affecting Aslan's education, Hope would have to be removed from the position of final decision maker, a position she had assumed, but was not granted by the California court. In making this determination we give deference to the fact that the district court had the opportunity to see and hear the testimony of the parties and assess their credibility.

We find that Hope's contention that the court abused its discretion because Sunny did not specifically request final say in education is also without merit. In his complaint, Sunny requested the court to order joint legal and physical custody. Legal custody focuses entirely on decision making authority. *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021). Joint legal custody refers to a mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health. *Id.* Clearly, Aslan's educational needs are part of the issue of legal custody. Hope was put on notice that legal custody would be discussed at trial and had the opportunity to fully litigate the issue. Extensive evidence was presented by both Sunny and Hope relating to Aslan's education. While Sunny did not specifically request final decision making authority over educational decisions, the district court recognized that a stalemate over educational decisions was not in Aslan's best interests. In this case, the first decision to be made by the parties was with respect to where Aslan should be enrolled. Such a decision of necessity carries a deadline by which a decision must be made. Therefore, given the history present in this case, we can find no abuse of discretion in the court's order which grants Sunny final say as to Aslan's education should the parties reach an impasse after mediation.

*Increased Parenting Time for Sunny.*

We next turn to the court's order granting the parties joint physical custody and implementing a week on, week off parenting time schedule. Modifying a custody or parenting time order requires two steps of proof. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id.* Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id.* Sunny alleged in his complaint, and Hope agreed, that his move to Nebraska in 2019 was a material change in circumstances. The district court found the same. On appeal, Hope does not challenge this finding. Instead, Hope argues that changing the previous custody order to significantly increase Sunny's parenting time was not in Aslan's best interests.

When determining the best interests of the child in the context of custody, a court must consider, at a minimum: (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. Neb. Rev. Stat. § 43-2923 (Cum. Supp. 2014). When making determinations as to the allocation of parenting time in a child's best interests, a trial court should also consider the parties' ability to communicate on issues such as transportation, homework, discipline, medical and dental appointments, and extracurricular activities. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Other relevant considerations include stability in the child's routine, minimization of contact and conflict between the parents, and the general nature and health of the individual child. *Id.* The fact that one parent might interfere with the other's relationship with the child is also a factor to consider but is not a determinative factor. *Id.*

In applying these factors, Hope's general argument is that she has been Aslan's primary caretaker for his entire life and changing to a week on, week off parenting schedule would significantly disrupt Aslan's well-being. Hope's argument relies heavily on evidence presented at trial that Aslan experiences severe levels of anxiety related to visitations with Sunny. At trial, Sunny refuted Hope's allegations and explained that he and Aslan enjoyed their time together. Aslan's report to Rida agreed with Sunny's assessment. Hope also cites Peterson's testimony claiming that Aslan expressed a desire to keep visitations with Sunny at two days per week. The appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other. *Lindblad v. Lindblad, supra*. We give weight to the fact that the district court found both Peterson's testimony and Hope's allegations not to be credible.

In ordering more parenting time for Sunny, the district court made two significant findings. First, the court found that Sunny had the ability to provide for Aslan's well-being. In reviewing the record, evidence was presented that Sunny had made significant efforts to stay involved in Aslan's life even when living a considerable distance away. He moved from California to Nebraska to be closer to his son. After the move, Sunny utilized all of the visitation time he had pursuant to the prior court order, and made several requests to Hope for more time with Aslan. During his parenting time, Sunny would engage in activities with Aslan and cooked his favorite meals. Sunny also took the initiative to contact Aslan's doctors for updates and to ensure he was properly caring for his son's health needs. He learned meditative exercises to help Aslan with his anxiety. Sunny had the ability, and more importantly the desire, to provide for his son in a more significant way.

Second, the court found that Hope had shown a pattern of interfering with and denying Sunny's court ordered parenting time. It is clear from the evidence that Hope has been Aslan's primary caretaker and that the two have a good relationship. However, Hope did very little to include Sunny in Aslan's life. Evidence at trial showed that Hope unilaterally chose all of Aslan's medical providers without consulting Sunny. She singlehandedly made the decision to homeschool Aslan and did not tell Sunny about the potential move to Scotland until Sunny filed his complaint to modify the custody order. Numerous messages between Sunny and Hope revealed that Hope continuously rejected Sunny's requests for more time with Aslan. The record further revealed that Hope exaggerated and perhaps exacerbated the anxiety experienced by Aslan, the very issue she has cited as a basis for denying Sunny more parenting time. The record demonstrates a pattern of Hope dismissing professionals whose opinions and recommendations did not align with her own.

The district court concluded that it was in Aslan's best interests to spend more time with his father. In reviewing the record, the district court did not abuse its discretion in awarding Hope and Sunny joint physical custody with a week on, week off parenting schedule. Aslan has a good relationship with both of his parents, and they have each provided for the general health, welfare, and social behavior of Aslan. Though Hope and Sunny differ in their parenting styles, both want the best for Aslan's future development. Sunny and Hope have shown that when necessary, they have the ability to communicate regularly regarding issues involving their son. The district court found that Aslan would benefit from the opportunity to bond with both of his parents through a joint physical custody arrangement. We can find no abuse of discretion in the district court's decision.

## CONCLUSION

For the reasons set forth above, we affirm the order of the district court.

AFFIRMED.