IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HAYS V. HAYS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHANE C. HAYS, APPELLEE,

V.

KATIE M. HAYS, NOW KNOWN AS KATIE M. SMITH, APPELLANT.

Filed November 1, 2022.    No. A-21-956.

Appeal from the District Court for Scotts Bluff County: ANDREA D. MILLER, Judge. Affirmed.

Alex M. Lierz, of Rembolt Ludtke, L.L.P., for appellant.

Audrey M. Long, of A. Elliott Law, P.C., L.L.O., for appellee.

PIRTLE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Katie M. Hays, now known as Katie M. Smith, appeals an order of the district court for Scotts Bluff County which modified the 2017 decree of dissolution which dissolved her marriage to Shane C. Hays. The district court modified the decree in two ways. The district court altered the previously awarded parenting time schedule from a 5-2/2-5 schedule to a week on/week off arrangement. The court also modified the parties' joint legal custody arrangement such that Shane would have the "final say" for decisions related to the health care and activities of the children. Katie would have the "final say" for decisions related to education and religion.

On appeal from the district court's modification order, Katie asserts that the district court erred in denying the requests she prayed for in her complaint to modify with respect to physical custody and parenting time and by altering legal custody and parenting time as outlined above. Katie also challenges numerous pretrial decisions made by the district court. Specifically, she

- 1 -

assigns and argues that the district court erred when it overruled her motion to strike Shane's untimely answer and counterclaim. She also assigns and argues that the district court erred when it sustained Shane's motion for her to undergo a mental health examination pursuant to Neb. Ct. R. Disc. § 6-335 and overruling her motion in limine to exclude the psychologist's report and testimony. Finally, she challenges the district court's findings that Shane was not in contempt of the prior order of the court and that Shane should not be required to pay her attorney fees.

Upon our review, we affirm the district court's decisions in all respects.

BACKGROUND

Shane and Katie were married in October 2010. Two children were born of the marriage, Reese, born in 2012, and Knox, born in 2015. The parties were divorced pursuant to an agreed upon decree of dissolution entered by the district court on November 14, 2017. As part of the 2017 decree, Shane and Katie were awarded joint legal and physical custody of the children with parenting time split 50/50. Shane's weekly parenting time ran from 6:30 p.m. Sunday to 6:30 p.m. Tuesday. Katie's weekly parenting time began at 6:30 p.m. on Tuesday and ended at 6:30 p.m. on Thursday. Weekend parenting time was alternated. In September 2018, the district court entered an order approving a stipulated modification between Shane and Katie. The modification changed the time for the parties' weekly parenting time such that Shane had parenting time from 8 a.m. on Monday to 8 a.m. on Wednesday. Katie had parenting time from 8 a.m. on Wednesday to 8 a.m. on Friday. The parties continued to alternate weekends. In addition, the party who did not have physical possession of the children had the right to telephone the children every day between 6:30 p.m. and 7:30 p.m.

In November 2019, the district court entered a second modification order following a trial on a complaint to modify filed by Shane. The district court declined to modify either the parenting time schedule or the award of joint physical and legal custody. However, as relevant to the present appeal, the district court did find that the daily telephone calls were "problematic." The district court modified its prior order on telephone visitation to require that each parent would have a minimum of two telephone calls with the children during periods when the other parent had 5 consecutive days of parenting time.

On May 29, 2020, Shane filed an ex parte emergency motion to enforce parenting time. In the motion, he alleged that Katie attempted to deny his regular weekend of parenting time and his summer parenting time, thus preventing him from taking the children on vacation. The district court entered an order providing Shane with certain specified parenting time.

On September 2, 2020, Katie filed the present complaint for modification wherein she alleged that a substantial and material change in circumstances existed affecting the best interests of the children. She asserted that Shane failed to effectively communicate with her and delegated his parental authority to his current wife, Haley Hays. Katie alleged that Shane refused to allow Katie to communicate with Alexandria Osborn, the daycare provider that Shane used for the children and encouraged Osborn to not share information about the children with Katie. Katie also asserted that Shane repeatedly and continually took steps to alienate the children from Katie. She alleged that Shane failed to provide a nurturing and appropriate environment for the children. Based on these allegations, Katie requested that the parenting plan be modified to provide her with

additional parenting time. She did not request any change to the court's prior orders as to legal or physical custody.

Also on September 2, 2020, Katie filed a verified motion for order to show cause. In addition to restating many of the allegations contained in the complaint to modify, Katie alleged that Shane and Haley disparaged and denigrated her by calling her names in the presence of the children. Katie also alleged that Shane refused to pay his share of the children's expenses for medical care and extracurricular activities. The district court entered an order to show cause as to why Shane should not be held in contempt.

On January 18, 2021, Shane filed his answer and counterclaim to Katie's complaint for modification. In his answer, Shane generally denied the allegations in Katie's complaint for modification. In his counterclaim he asserted that Katie's complaint for modification and verified motion for order to show cause were filed with unclean hands. He alleged that Katie intentionally interfered with his parenting time and refused to allow the children to participate in extracurricular activities. Although he essentially asserted that Katie's actions were in contempt of the court's prior orders, he did not request the district court to find her in contempt. Shane instead requested that he be awarded "primary custody" of the children, that Katie's parenting time be restricted, and that Katie be prohibited from "checking on" the children at daycare during Shane's parenting time and "showing up unannounced" at Shane's home during his parenting time. Shane also requested an order requiring Katie to attend counseling.

On January 22, 2021, Katie filed a motion to strike Shane's answer and counterclaim on the basis that such answer and counterclaim were untimely filed. In her motion, Katie specifically requested that the answer and counterclaim be stricken or dismissed. In the alternative, Katie requested that the trial be continued in order to allow her to conduct additional discovery regarding the allegations contained in Shane's filing. Shane objected to the motion to strike, generally noting that through discovery he had notified Katie as to the reasons why he was seeking custody and the reasons he believed Katie was unfit as a parent. It was his belief that Katie had been notified that he was seeking custody and the reasons therefor.

A hearing on Katie's motion to strike was held on January 28, 2021. Katie argued that she was prejudiced by the untimely filing because Shane's answer and counterclaim raised a number of new issues that were not disclosed in discovery or depositions. Shane's counsel asserted that she forgot to file the answer and counterclaim, however, she also noted that the district court had equitable powers to modify a parenting plan pursuant to the best interests of the children. Shane's counsel stated

> [s]o regardless if this Court does or does not allow my client's Answer and Counterclaim, this Court is going to hear the same evidence that's been provided to [Katie] and her attorney as to why we object to the complaint as modified and are requesting changes to be made. . . . If the Court is so inclined to grant time to [Katie] to, I guess, further depose, further discover, whatever it is they think they need even though all evidence has been provided to [Katie], my client is not objecting to a continuance of the trial.

At the close of the hearing, the district court explained that contrary to its normal practice, it had set the trial date prior to the deadline for the responding party to file its answer and counterclaim had passed. The district court explained that, as a result of this departure from normal procedure,

no status hearing was set wherein it would normally catch procedural deficiencies well in advance of trial. The district court concluded that Shane should have an opportunity to have the issues raised in his answer and counterclaim heard. The court overruled the motion to strike and allowed the untimely filing of the answer and counterclaim. The district court also continued the trial to April 20, 2021, to allow Katie time to conduct further discovery and fully explore the matters contained within the answer and counterclaim.

On February 4, 2021, Shane filed a motion for a § 6-335 exam specifically praying for an order to require Katie to submit to a mental health evaluation. At the hearing on the motion, two affidavits were received into evidence, one from Shane and one from Shane's wife, Haley. The district court also received into evidence Osborn's deposition. In Shane's affidavit, he asserted that he had serious concerns for Katie's mental stability. He alleged that she has a problem with alcohol abuse and has exhibited signs of intoxication during telephone calls with the children. In addition, he asserted that the reason that he opposed any change in parenting time was his concern for Katie's antagonistic and aggressive behavior. He believed that Katie's mental health deteriorated since 2018 when he began his relationship with Haley. Both Shane and Haley's affidavits described in detail a number of specific events in which there were conflicts between Katie and Shane or between Katie and the children. Shane and Haley asserted that these behaviors were caused by Katie's mental health struggles. In her deposition, Osborn testified that she felt harassed and threatened by Katie. She explained that there was one incident where Katie threatened to call the Department of Health and Human Services because she would not communicate with Katie. In another incident, Katie arrived at the daycare in an angry state such that it was disruptive to her operation of the child care. Osborn believed that Katie was very aggressive in asserting her frustrations.

Following a hearing on Shane's motion for a § 6-335 exam, the district court granted Shane's request. The district court ordered that Katie submit to a mental health examination after Shane submits to Katie the name, address, and professional credentials of the proposed mental health professional. In addition, Shane was ordered to submit to a mental health examination if Katie wished to request and pay for such an examination.

Dr. Gage Stermensky, a licensed psychologist who is board certified in biofeedback and psychophysiological intervention, was selected to complete the mental health evaluation. Stermensky's report was completed and sent to Katie on April 18, 2021, 2 days prior to the commencement of trial.

Katie filed a motion in limine on April 19, 2021, requesting that Stermensky's testimony and his report be excluded from the evidence at trial. Katie asserted that she had not received all documents and records that Stermensky was provided for review. Katie further alleged that she was misled by Shane's counsel as to what records were provided to Stermensky. She asserted that Stermensky relied on recordings of telephone calls between her and the children that she believed were illegally obtained under state and federal law. In addition, she asserted that she did not receive the report until 2 days before trial. She requested the court to either exclude Stermensky's report and testimony or, in the alternative, continue the trial so that she could have additional time to review, prepare, and gather evidence. Shane objected to the motion in limine. He asserted that Katie was notified in April 2018 that he would be recording telephone conversations between Katie and the children. He noted that the recordings stopped in 2019 by agreement of the parties. He

further noted that Stermensky stated that the recordings of these conversations were of poor quality and, thus, difficult to discern. The district court overruled Katie's motion in limine, but ordered that Stermensky's trial testimony not be given until either May 24 or 27, 2021, to give Katie additional time to prepare.

We recount Stermensky's testimony prior to addressing the other evidence received at trial. Stermensky testified that in conducting his evaluations, he considers information from interviews, collateral information, and psychological testing. He explained that he conducted a psychosocial interview of Katie which covered various aspects of her psychosocial history, family history, employment history, medical history, mental health history, substance abuse history, educational history, and relationship history. The interview lasted approximately 1 hour 30 minutes. He testified that he reviewed collateral records including Facetime recordings of telephone calls between Katie and the children, affidavits, police reports, and daycare records. The police reports that he reviewed were regarding Katie's arrest for driving under the influence in 2017, but he noted this charge was ultimately dismissed. Stermensky explained that he did not consider some of the collateral information provided to him given that he could not independently substantiate its veracity.

In the course of Stermensky's testimony, he indicated that he diagnosed Katie with a moderate alcohol use disorder. He based this diagnosis primarily on information he obtained during his interview with Katie. Specifically, Stermensky cited to information received from Katie that in high school, she was found guilty of being a minor in possession of alcohol. Despite this conviction, Katie reported that her drinking escalated during her high school years as a result of what she perceived to be a lack of supervision from her parents. During the interview, Katie reported that she would drink alcohol 1 to 4 times per week when she first married Shane. However, she reported that she had decreased her use of alcohol to drinking 1 to 2 drinks two nights per week. Stermensky indicated that he also based his diagnosis of moderate alcohol use disorder on collateral information he received, such as Katie's arrest for driving under the influence in 2017, her failure to pass a breath test during an orientation period for a job she had obtained at a hospital, and a Facetime recording where it appeared that Katie may have been intoxicated when talking to the children.

Stermensky testified that he also diagnosed Katie with unspecified personality disorder based on the combination of the results of Katie's clinical testing, her responses during the interview, and his review of the collateral records. He observed that Katie possessed traits associated with narcissistic, borderline, and histrionic disorders. He did not feel there were enough traits found within any of those specific disorders to make a full diagnosis but found there was still personality dysfunction as a result of these traits. He testified that he observed Katie to exhibit entitlement behaviors and to possess a desire to have people comply with her expectations while not believing that she had to follow the rules which applied to other people. He described her condition to result at times in arrogant, haughty, and impulsive behavior. Stermensky recommended that Katie undergo evidence-based personality disorder treatment and anger management. He noted that she needed to develop responsibility and empathy. He also believed Katie and the children would benefit from parent-child interaction therapy.

Outside of Stermensky's testimony regarding Katie's mental health, the remaining evidence presented at the modification trial focused almost exclusively on the contentious nature

of the relationship between Shane and Katie and the effects of that strained relationship on the children. A major point of contention between Shane and Katie is the children's extracurricular activities. The evidence revealed that both children are involved in multiple activities.

According to Katie's testimony, Shane routinely enrolls the children in extracurricular activities without first consulting her. Then, if she opposed his decisions regarding the activities, he would become angry. For example, Katie testified that Shane enrolled Reese in gymnastics without her permission. Such activity took place in part during her parenting time. She explained that "he just went up to the gymnastics place and signed her up and said she will be doing it on my time, there's nothing you can do." According to Katie, Shane also enrolled the children in swimming lessons without talking with her first and Shane continued to have Reese participate in basketball over Katie's objections. Katie testified that because the children might only attend the activities during Shane's parenting time, it seems that the children do not know "if they're supposed to tell me about [the extracurricular activities] sometimes." Katie expressed that it would be good for only one parent to have the "final say" in what activities Reese and Knox participate in if she and Shane cannot come to an agreement.

Katie also presented evidence that she and Shane do not agree on how to balance the children's activities with needed discipline. Katie testified that she disallowed the children from participating in activities as a punishment for misbehavior. However, according to Katie, when she informed Shane about the punishment she wished him to continue, he responded that he would not enforce her wishes during his parenting time. In contrast, Shane testified that Katie often used the children's activities as a weapon, threatening to withhold the children from their activities if she was not permitted to speak to the children on the telephone as outlined in the parenting plan. Haley testified that by the time of trial, Katie chose to no longer take the children to their activities during her parenting time.

The parties also appear to disagree on what constitutes unacceptable behavior by the children. Katie expressed concern about specific incidents wherein she believed a child had been overly aggressive or hurtful to the other. Katie testified that when she attempts to communicate with Shane about behavioral issues such as this, Shane denies that the behaviors occur when the children are with him. Shane and Haley both testified that they have not observed the negative behaviors that Katie reports to exist in her home. Shane explained that he believes the children's behavior is "normal" and does not believe that their behavior is "out of line." He believes that Katie's descriptions of the children's behavior are exaggerated and are made to show that "something is wrong with the way [he is] parenting."

Katie presented evidence that the children's behavior worsened when the children returned to Katie's home after being with Shane. Katie Mueller has been the children's nanny for the past 5 years when they are in Katie's home. Mueller testified to her belief that the children's behavior is worse right after they return from Shane's home. Similarly, Katie's husband, Derek Smith, testified that when the children return from Shane's home, they are exhausted and require additional attention. Derek corroborated Katie's observations that Reese and Knox are sometimes aggressive toward each other including hitting, pinching, and kicking each other.

Shane testified that Katie's behavior at the children's activities has become problematic. Both parties routinely attend the children's activities. Haley testified that she has observed Katie interfere in the children's activities by following them around and distracting them while an

activity is in progress. This typically happens when the activity occurs during Shane's scheduled parenting time. To the contrary, according to Haley, when she and Shane attend the children's activities during Katie's parenting time, they do not interact with the children, but rather simply observe. Haley also testified that Katie and Derek often make it a point to sit close to them when the activity falls on Shane's parenting time creating tension. She believes that the children are aware of this tension.

The parties also disagree on how to address the children's mental health needs. Katie believes that Shane prematurely ended Reese's individual therapy sessions. Shane denied Katie's assertion. He explained that although he initially did not know that Reese was enrolled in therapy, he allowed Reese to continue therapy weekly for approximately 1 year before Reese's counselor recommended that Reese no longer attend. Despite the counselor's recommendation, Shane continued to allow Reese to participate in therapeutic sessions. However, Shane testified that currently, Reese's counselor no longer wanted to have Reese as a patient until such time as Shane and Katie improved their coparenting abilities. Katie testified that Knox has also been referred to therapy but had not attended as a result of Shane's objections. According to Katie, Shane responded that he would only consider the children attending counseling if Katie independently attended counseling. During the modification proceedings, Shane initially testified that he does not believe that either Reese or Knox currently need therapy. However, after reading Stermensky's report, he later acknowledged that the children may benefit from therapy.

The parties have also had disagreements regarding deviations from the court ordered parenting plan. For example, in November 2020, Shane and Haley had symptoms of COVID-19. Shane contacted Katie to ask her if she wanted additional time with the children so they would not get sick. He asked that the time he forwent be given back to him at some point. Katie agreed. Although Katie offered Shane some make up parenting time for the time he lost, by the time of trial, more than 5 months later, Shane had not received all of the days he missed. Another example of the parties' inability to be flexible with one another occurred in August 2020, when Katie was required to go to Denver to give birth to her youngest child due to a complication. When she went to Denver, Shane asked that Reese and Knox stay with him, but Katie denied his request. On the other hand, Katie testified that she did not receive her extra parenting time over the summer as delineated in the parenting plan. The parenting plan required her to inform Shane by a certain date which days she wanted to exercise for her vacation. However, Shane testified that because Katie informed him late as to what days she wanted, he did not consent to her having the extra days.

Shane also presented evidence as to instances where Katie interfered with or denied his parenting time. Shane explained that he communicated with Katie about wanting the children to attend a scheduled vacation with him, but he and Katie could not reach an agreement on this issue without seeking involvement from the district court. In addition, Shane testified that Katie has driven by his house unannounced to check on the children.

The children's transitions between the parties' homes have been particularly contentious. In fact, Haley testified that she began to attend the exchanges because of how difficult the transitions had become. Shane and Haley both testified that they have called law enforcement multiple times to assist in parenting exchanges. Katie testified that Shane frequently yells at her during these exchanges. According to Katie, at these exchanges, Shane would also allege that the children were not sick and that Katie was drunk. She also testified that Shane would make threats

toward the children. Haley testified that during an exchange prior to their extended summer vacation time with the children, Katie simply refused to bring the children and Reese began to cry.

There was one particularly contentious exchange that occurred on December 18, 2020, which was immediately before Shane was to have holiday parenting time with the children for 9 days. Katie testified that prior to the exchange, she attempted to discuss with Shane when she would have telephone calls with the children during Shane's holiday time with the children, however, Shane did not respond. Shane testified that when he arrived at the exchange, Katie began yelling at him demanding specific times that she would be allowed to talk to the children on the telephone. Shane testified that Katie would not let the children get out of her vehicle until she received the specific times to speak to the children and additional telephone calls. Haley began recording the exchange because Katie was "completely crazy" and the recording was received into evidence. The video does demonstrate that Katie is insistent on knowing when she can talk to the children on the telephone and will not allow Shane to retrieve the children from her car until he satisfies her demands. Shane does accuse Katie of being drunk and is seen on the video saying that he is tired of her "bullshit." Katie does not allow the children to leave the car until Shane has obtained assistance from a police officer.

Katie contended that Shane worked with Osborn to ensure that Osborn did not provide information about the children to Katie. The children have attended an in-home daycare center owned and operated by Osborn during Shane's parenting time since December 2018. Osborn testified that Katie arrived at the daycare three or four times unannounced wanting to see Reese and Knox. Osborn observed that Katie was upset during the times that she was at the daycare. However, she conceded on cross-examination that these visits would last less than 10 minutes and that Katie never raised her voice toward her. Although Osborn testified that Shane never explicitly asked her to stop communicating with Katie, she independently decided to limit her communication with Katie because she did not feel comfortable with her. Similarly, Shane denied that he ever told Osborn not to speak with Katie regarding the children. However, he subsequently clarified that he told Osborn that she should handle the situation with Katie however Osborn felt was appropriate, but that if he were in her situation, he would not deal with her.

According to Katie, she wanted to speak with Osborn because of concerns she had been made aware of, specifically about certain music being played at the daycare center, Knox being made fun of, and someone sharing a picture of knives with Reese. According to Katie, she initially attempted to speak to Shane about these issues but Shane denied that there was anything wrong. She attempted to call Osborn but Osborn did not return her telephone call. Katie also attempted to have an in-person meeting with Osborn but Osborn initially refused. Osborn ultimately agreed to meet with Katie if Shane, Haley, and Derek were also present at the meeting. Prior to agreeing to this meeting, Osborn testified that Katie threatened to contact the Department of Health and Human Services. Osborn and Katie both testified that there were no resolutions to the issues that Osborn and Katie had, even after this meeting. Following the meeting, Katie did agree that she would notify Osborn before visiting the daycare, but Osborn testified that Katie has not honored this promise.

Shane and Katie have also had conflicts related to medical appointments for the children. Katie believes that it is important for one parent to have the "final say" with respect to medical decisions and that she should be granted that power. Shane testified that these conflicts arose after

his marriage to Haley. Haley is a nurse practitioner at an urgent care located near Shane's house. Shane testified that he takes the children to the urgent care due to its location and his familiarity with the medical providers who work there. According to Shane, Katie is opposed to utilizing the urgent care for the children's medical needs. Shane testified about two specific incidents where Katie's behavior interfered with medical appointments for the children. Shane testified that he took Knox to the urgent care when he thought that Knox had COVID-19. Katie showed up and "made a big scene where it was so embarrassing and so uncomfortable" that Shane rescheduled the appointment. In another incident, Shane took Knox to the urgent care for an x-ray. Katie acted aggressively in the room during the x-ray. Finally, Shane testified that Katie does not always inform him of medical appointments she schedules for the children.

The parties' telephone calls with the children are another point of contention. As we discussed above, the contentious nature of the telephone calls led the district court to modify the decree to limit the number of calls between the children and the nonpossessory parent. In 2018, both parties recorded telephone calls that occurred between the children and the other party. However, this recording of telephone calls stopped in 2019. Derek testified that he is not allowed to talk to the children on the telephone when they are with Shane. Shane explained that Katie either denies or interrupts his telephone calls with the children. In addition, he observed Katie make derogatory comments toward Haley and Shane during her telephone conversations with the children. Haley testified that she and Shane encourage Reese and Knox to talk to Katie and Derek on the telephone. She also testified that she observes the telephone calls between Shane and the children when they are with Katie. She believes that Katie attempts to end the telephone calls prematurely and the children's engagement with Shane is typically poor.

Katie also presented evidence about Shane allowing the children to drive golf carts or four-wheelers without supervision. Ricci Ayala, a waitress at the Mitchell Golf Course, testified that she witnessed Reese driving a golf cart unsupervised with Knox as a passenger. Derek also testified that he observed Reese driving a golf cart without any supervision. Shane acknowledged that when he lived on the Mitchell Golf Course, Reese would drive around Shane's property and play two of the holes on the golf course. However, Shane denied that Reese drove the golf cart without his supervision.

At the close of evidence, the district court entered an order which found that joint legal custody remained in the children's best interests and should therefore continue. However, the district court directed that if the parties cannot reach agreement, Shane was granted the "final say" with regard to decisions related to the children's health and extracurricular activities while Katie was granted the "final say" with regard to decisions involving education and religion. The district court found that although communication between Shane and Katie needed to improve, they were able to communicate when they are "forced" to communicate with each other. The district court expressed concern that Shane and Katie would not include the other in major decisions if either was given full legal custody. The district court reminded the parties that they are to discuss and make decisions together regarding the children. It is only after a thorough discussion between the parties results in no resolution that a party could invoke their final decisionmaking authority.

The district court also found that joint physical custody remained in the children's best interests. The district court noted that although Shane and Katie had a longstanding contentious relationship which had become even more heated in recent times, the children still had a loving

relationship with each parent and the parents love the children. The district court further noted that it was concerned with Katie's interactions with Osborn and Haley, but that those interactions alone did not justify a change in the amount of parenting time either party would enjoy. However, the district court found that a new parenting time schedule that would minimize the number of transitions between the parties' homes (and interactions of the parents) was in the best interests of the children. The district court ordered that the parenting schedule be modified to alternating weeks with the transition to take place every Monday at 7:30 a.m. During the school year, the possessory parent will simply take the children to school at that time with the nonpossessory parent then picking them up after school. The court noted that the new plan's design was to reduce the children's exposure to continued disagreements of the parties. Telephonic parenting time for the nonpossessory parent was ordered to occur on Tuesday and Thursday evenings at 7:30 p.m. The court approved the parties agreed upon holiday parenting time schedule. The district court also ordered each party to attend both individual and family counseling designed to improve communication and reduce conflict between the parties.

The district court found that Katie and Shane were both frustrating each other's parenting time equally. The district court wrote "[w]hile this is certainly not acceptable both parties come to this court with unclean hands seeking a finding of contempt. Neither party will be held in contempt of court, however both parties are admonished to follow the parenting plan. . . ." With respect to the requests for attorney fees, the district court found that each party was to pay their own attorney fees.

Both parties filed motions to alter or amend the decision of the district court. The district court did not alter its prior order, but did provide some clarification as to its provisions.

Katie appeals to this court from the district court's order of modification.

ASSIGNMENTS OF ERROR

Renumbered and restated, Katie assigns and argues that the district court erred in denying her motion to strike Shane's untimely answer and counterclaim, in sustaining Shane's motion for a § 6-335 examination over her objection, and in overruling her motion in limine which sought to exclude Stermensky's report and testimony. Katie also assigns and argues that the district court abused its discretion in modifying legal custody to give Shane the "final say" with regard to decisions involving the children's health care and extracurricular activities, in denying Katie's request to have increased parenting time, in declining to find Shane in contempt of court, and in declining to award Katie attorney fees.

STANDARD OF REVIEW

Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *U.S. Bank Nat. Assn v. Peterson*, 284 Neb. 820, 823 N.W.2d 460 (2012). The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *Id.*

As a general rule, the granting or withholding of permission to file a late pleading rests in the discretion of the trial court. *Buffalo County. v. Kizzier*, 250 Neb. 180, 548 N.W.2d 757 (1996).

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record,

and will be affirmed absent an abuse of discretion. *Windham v. Kroll*, 307 Neb. 947, 951 N.W.2d 744 (2020).

A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *U.S. Bank Nat. Assn v. Peterson, supra.*

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

ANALYSIS

*Katie's Motion to Strike.*

Katie asserts that her motion to strike and dismiss Shane's answer and counterclaim should have been granted as a matter of law because his answer and counterclaim were untimely filed. She argues that she was prejudiced because she was forced to start over in her preparation for trial on Shane's counterclaim. Shane concedes that his answer and counterclaim were not timely filed. But he asserts that Katie was not disadvantaged by the late filing and thus, was not harmed by the district court's decision overruling her motion to strike.

Neb. Ct. R. Pldg. § 6-1112(a) provides that "[a] defendant shall serve an answer within 30 days after being served with the summons and complaint or completion of service by publication." However, Neb. Ct. R. Pldg. § 6-1106(b) provides for the enlargement of such period after its expiration as follows:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. The court may not extend the time for taking any action specified in any statute, except to the extent and under the conditions stated in the statutes.

The Nebraska Supreme Court has not defined what "excusable neglect" means in the context of § 6-1106(b)(2) but the Eighth Circuit and other federal courts have stated that the determination of whether neglect is excusable "is an equitable one, taking account of all relevant circumstances." *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010). The circumstances relevant to this equitable determination include "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

Katie filed her complaint for modification on September 2, 2020. Shane filed his answer and counterclaim asking for sole physical custody and restricted parenting time for Katie on January 18, 2021. Katie filed a motion to strike Shane's pleading that same day. Shane did not file a motion for leave to file his answer and counterclaim out of time. However, in a hearing on Katie's motion to strike, Shane's attorney asserted that due to her own oversight, an answer and counterclaim had not been timely filed. She asserted that Katie would not be negatively impacted by the late filing because the district court already possessed the necessary equitable powers to determine custody and parenting time based on the pleadings before it and the best interests of the children.

Shane's attorney did not offer a reason for her failure to timely file the answer and counterclaim other than inadvertent oversight. The question here is whether Katie was prejudiced by the late filing. We cannot say that the district court abused its discretion in allowing Shane to file his answer and counterclaim out of time. In so finding, we note first that the district court continued the trial for over 2 months after the answer and counterclaim were filed to allow Katie additional time for further discovery and preparation. We also note that the district court accepted some of the responsibility for the late filing given its departure from normal procedure in setting the case for trial before the deadline for filing the answer had passed. The court stated that as a result of its actions, no status hearings were set at which the court and the parties would have noticed sooner the lack of a responsive pleading having been filed by Shane. The bottom line of the court's holding was its desire that all issues existing between the parties be litigated in this proceeding.

Even if Shane had not filed a late answer and counterclaim, a trial court has an independent responsibility to determine questions of custody and parenting time of minor children according to their best interests, which responsibility cannot be controlled by an agreement or stipulation of the parties. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). A court is required to review a parenting plan and determine if it meets the requirements of the Parenting Act and if is in the best interests of the minor child or children. *Id.* Any evidence that Shane would have presented in opposition to Katie's request for modification would also support his answer and counterclaim. Since the district court had an independent duty to fashion a parenting plan which is in the best interests of the children and since Katie was granted additional time to prepare for any additional issues raised in Shane's pleadings, we find that no real prejudice was suffered by Katie as a result of the late filing.

Finally, we note that there was no real harm to Katie. While there was a delay, the court did not grant Shane the relief he requested in his counterclaim. Shane asked for sole physical and legal custody, as well as restricting Katie's parenting time. The district court did not grant these requests.

We find no abuse of discretion in the district court's decision to allow the late filing of Shane's answer and counterclaim and its denial of Katie's motion to strike.

*Shane's Motion for Mental Health Examination.*

Katie assigns and argues that the district court abused its discretion in sustaining Shane's motion for a § 6-335 examination over Katie's objection. She asserts that Shane should have been judicially estopped from moving for a § 6-335 exam because Shane represented to the court, during

the hearing on Katie's motion to strike, that all evidence in their possession had previously been provided to Katie, and that the evidence that would be heard at trial would be the same, regardless of whether his answer and counterclaim were allowed. She further asserts that even if her judicial estoppel argument fails, the motion should have been overruled because Shane did not show "good cause" for a mental health examination.

The doctrine of judicial estoppel holds that one who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding. *In re Loyal W. Sheen Family Trust*, 263 Neb. 477, 640 N.W.2d 653 (2002). The doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Id.* Whether judicial estoppel is applicable turns on whether the court has accepted inconsistent positions from a party. *Jardine v. McVey*, 276 Neb. 1023, 759 N.W.2d 690 (2009). The requirement that the position be successfully asserted means that the party must have been successful in getting the first court to accept the position. *Id.* And absent such acceptance, the doctrine of judicial estoppel does not apply. *Id.* Judicial acceptance requires the court to adopt the position urged by the party, either as a preliminary matter or as part of a final disposition.

We find that judicial estoppel does not apply in the present case. We first note that none of the cases cited by Katie apply judicial estoppel to procedural matters such as whether discovery has been completed. Katie asserts that it should apply herein because Shane, in opposition to Katie's motion to strike, stated that allowance of his answer and counterclaim would not require any further discovery or production of evidence. Katie requested that if her motion to strike was overruled, she wanted a continuance to conduct further discovery and further prepare for trial. Shane's counsel noted that he did not oppose such a continuance. When the district court overruled the motion to strike, it granted Katie's request for a continuance. The district court also noted that it was allowing the answer and counterclaim to stand because of its own departure from normal procedure that would have revealed the lack of a responsive pleading at a time well before trial. Moreover, as we discussed above, in modification of child custody actions, the district court has an independent duty to determine and order a parenting plan that is in the best interests of the children. To find that Shane was precluded from conducting any further discovery leading to the production of relevant evidence while Katie could do so would not serve the fact finding process and serve the best interests of the children. Based on the record before us, we find no basis for applying the doctrine of judicial estoppel.

Next, we turn to Katie's argument that Shane failed to show good cause for his motion to conduct a mental health examination.

Section 6-335(a) provides in relevant part:

When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by one or more physicians, or other persons licensed or certified under the laws to engage in a health profession, or to produce for examination the person in his or her custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner,

conditions, and scope of the examination and the person or persons by whom it is to be made.

Generally the requirements of "in controversy" and "good cause" contained within § 6-335 are not satisfied by mere conclusory allegations or pleadings, but are fulfilled by a movant's affirmative showing that the condition to be verified by the requested examination, physical or mental, is actually controverted and that good cause exists for ordering the examination. *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010). To obtain discovery under § 6-335, the requisite showing does not require the movant to prove the movant's case on the merits at an evidentiary hearing, but may include a showing by an appropriate affidavit or other suitable information presented to a court whereby the court can perform its function under § 6-335. *Huber v. Rohrig, supra.* When requesting a physical or mental examination, a movant's ability or inability to obtain the desired information without the requested examination is relevant to a court's decision whether to order an examination under § 6-335(a). *Huber v. Rohrig, supra.*

In *Huber v. Rohrig, supra*, the Supreme Court found that the movant did not demonstrate good cause for a psychological evaluation when the movant requested such examination after the other party had already completed a neuropsychological examination which included a psychological clinical interview. In addition, the Supreme Court found that the movant failed to demonstrate any insufficiency in the medical and other reports supplied to the movant by the other party because such information was relevant to the other parties' cognitive abilities. *Id.*

In the present case, Katie does not contest that her mental health was in controversy but argues that Shane failed to adequately demonstrate that there was good cause to order such a mental health examination. We note that Katie offered no exhibits at the hearing that would demonstrate that she had undergone any type of psychological assessment or evaluation that had been provided in discovery. At the hearing, Shane provided his own affidavit and one authored by Haley detailing concerning and erratic behaviors they had seen Katie exhibit. Haley's affidavit also details her training and experience in the area of mental health conditions which she has as a licensed nurse practitioner. In addition, the deposition of Osborn demonstrated that Katie showed up at the daycare in such an angry state that was so disruptive that she could not care for the other children in her child care center. Based on the record before us, we cannot say that the district court abused its discretion in finding that Shane demonstrated good cause for a § 6-335 mental health evaluation.

*Katie's Motion in Limine.*

Katie asserts that with respect to his conclusions and diagnosis of her mental condition, Stermensky relied in part on recordings of telephone and Facetime conversations between herself and the children. She asserts that these recordings were made in violation of Nebraska statutes. Katie asserts that because the recordings were illegally obtained, Stermensky's opinions are tainted and should not have been received and considered by the district court. Alternatively, Katie asserts that Stermensky's report and testimony should have been excluded because his report was untimely disclosed to her. We address these arguments, in turn.

Under Neb. Rev. Stat. § 86-290(2)(c) (Reissue 2016), "it is not unlawful for a person not acting under color of law to intercept a wire, electronic, or oral communication when such person is a party to the communication or when one of the parties to the communication has given prior

consent. . . ." Under the same set of statutes, "oral communication" means: "[a]ny oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation but does not include any electronic communication." Neb. Rev. Stat. § 86-283 (Reissue 2016).

Even if we assume that Shane and Haley were not parties to the conversations, Katie did not demonstrate that she had an expectation that the communication was not subject to Shane's monitoring and the circumstances certainly did not justify this expectation. The conversations between Katie and the children occurred while the children were in Shane's home apparently utilizing Shane's telephone while he was exercising his parenting time. The communications were prearranged by the parties. According to Shane, Katie was notified that conversations between her and the children would be recorded. Moreover, there was evidence that both parties had previously recorded conversations between each other and the children. It was only after an agreement was reached between the parties that such recordings ultimately ceased. Based on the evidence before the court, we find no abuse of discretion by the district court in overruling Katie's motion in limine on the grounds that Stermensky reviewed and considered illegally recorded conversations between the children and Katie.

Katie asserts, alternatively, that Stermensky's report should not have been considered because it was not timely disclosed to her. We find this assignment of error to be without merit. Although we do not find a civil case on point, we note that in criminal cases, the Supreme Court explained that when a continuance will cure the prejudice caused by belated disclosure, a continuance should be requested by counsel and granted by the trial court. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998). A continuance will not cure every instance of belated disclosure such as in the case of lost or destroyed evidence or missing witnesses. *Id.*

Katie received Stermensky's report on April 18, 2021, one day after it was completed. The following day, Katie filed her motion in limine to exclude the report and testimony of Stermensky, or in the alternative to continue trial which was to start April 20, 2021. The district court ultimately found that Stermensky's testimony would not be heard until May 24, 2021. During this time, Katie's counsel was able to complete a deposition of Stermensky. Katie's counsel also admitted that she reviewed the collateral records that Stermensky relied upon in completing his report. Any purported prejudice to Katie due to the timing of the report was cured when the district court postponed Stermensky's testimony to provide additional time to allow Katie to depose Stermensky and complete discovery.

For the reasons set forth above, we find no abuse of discretion in the district court's decision to overrule Katie's motion in limine.

*Modification of Physical Custody.*

Katie assigns and argues error with respect to the district court's determination that the parties should maintain joint physical custody. However, in her complaint to modify, Katie did not request a modification of joint physical custody. Katie requested increased parenting time. Only Shane requested a modification of physical custody. And he does not appeal. As such, we need not address this assignment of error.

- 15 -

*Modification of Parenting Plan.*

Parenting time determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Winkler v. Winkler*, 31 Neb. App. 162, 978 N.W.2d 346 (2022). The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. *Id.* The right of parenting time is subject to continual review by the court, and a party may seek modification of a parenting time order on the grounds that there has been a material change in circumstances. *Id.*

Under the circumstances of this case, we cannot say it was an abuse of discretion to modify the parenting plan. The evidence adduced demonstrated constant conflict between Shane and Katie. Many incidents involving conflict between the parties occurred in the presence of the children. The court found that due to the continued deterioration of the relationship and communication between the parties, a new plan that limited contact between the parties was needed to serve the children's best interests. Of most importance to the court was limiting the parties' contact with each other while in the presence of the children. These conflicts had led to law enforcement being contacted multiple times to assist in exchanges. The court's response to the parties' inability to interact productively was not to take away parenting time from either party but to minimize their time together. In so doing, the court reduced the transitions between the parties to once per week and required that during most of the year, the parties need not be present together during the transition, since one party would drop the children off on Monday mornings, and the other would then pick the children up after school. The court also took steps to simplify telephone visitation periods and eliminated the issues which previously existed surrounding summer visitation, given the week on, week off schedule. We agree that all of the modifications made by the district court serve the children's best interests and were necessitated by a material change of circumstances. We find no abuse of discretion in the district court's modification of the parenting plan.

*Modification of Legal Custody.*

Katie asserts that the district court erred in awarding Shane "final say" with respect to decisions regarding the children's health and extracurricular activities.

Legal custody focuses entirely on decisionmaking authority and is defined as the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). Joint legal custody is the joint authority and responsibility for making major decisions regarding the child's welfare, while sole legal custody essentially establishes that one party will have the final say in decisions. *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021).

Appellate review of joint legal custody issues has often focused on the parties' ability to communicate. See, e.g., *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009). However, appellate courts review custody decisions for an abuse of discretion and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016).

In *State on behalf of Maddox S. v. Matthew E., supra*, this court affirmed the district court maintaining joint legal custody despite the parents not being able to communicate effectively. The child's guardian ad litem testified that the parents were engaged in a power struggle where there was an issue of who was in control and who had power. *Id.* The district court modified the parenting plan to specifically divide joint legal custody responsibilities between the parties in a manner to minimize contact and conflict between them. *Id.* We wrote that "[a]lthough still encouraging mutual decision-making, the court's specific division between the parties as to who has final say on the larger child-rearing decisions splits the parenting 'control' and will hopefully minimize conflict between the parties." *Id.* at 520, 873 N.W.2d at 220.

In the present case, the district court clearly found that the parties cannot communicate effectively. However, the district court still sought to encourage mutual decisionmaking because of its concern that either parent would not include the other if given sole legal custody. As such, the district court continued to require the parties to communicate and seek consensus on all major decisions regarding the children. However, the court recognized that the "final say" had to be apportioned between the parties in the event that they could not reach agreement. Pursuant to that conclusion, the district court gave Shane final decisionmaking authority over health and extracurricular activities and Katie final authority over decisions regarding education and religion.

Again, it is apparent that the district court in making its decision was seeking to minimize the conflict between the parties for the sake of the children's best interests. The court's decision is supported by the record. There was significant evidence that medical appointments were a part of a larger power struggle between the parties of who had control over the children. Katie would make medical appointments without involving Shane. Both parties sought to control which medical providers the children would see. There was also testimony that Katie had been disruptive when the children were taken to medical appointments by Shane. There was conflicting testimony about why the children stopped counseling and whether further counseling was justified.

In addition, there was significant evidence that the parties disagreed about which activities that the children should participate in. The undisputed evidence shows that Katie was willing to withhold the children from their activities during her parenting time when she felt such withholding served some purpose in the parties' ongoing disagreements. As such, the court was justified in granting Shane final say over activities and health care decisions. We find no abuse of discretion in the court's modification of legal custody.

*Contempt.*

Katie's verified motion to show cause alleged multiple instances for which Shane should be held in contempt for failing to follow the parenting plan. On appeal, Katie asserts that the district court erred in not finding Shane in contempt for failure to follow the parenting plan regarding parenting time. The district court found that Katie and Shane both attempted to find each other in contempt and that both parties had frustrated the parenting time of the other. Accordingly, the district court found that Katie and Shane both had unclean hands and declined to find either party in contempt.

Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue. *Farmington Woods Homeowners Assn. v. Wolf*, 284 Neb. 280, 817 N.W.2d 758 (2012).

Generally, conduct which forms a basis for a finding of unclean hands must be willful in nature and be considered fraudulent, illegal, or unconscionable. *Id.*

Katie alleged that Shane violated the parenting plan because he did not allow Katie to have additional make-up summer parenting time for time she had lost. Shane asserted that Katie submitted her proposed dates after the deadline set in the parenting plan, thus forfeiting her extended parenting time. It was undisputed that Katie did not provide Shane with all of the make-up parenting time he wanted for a period when he and Haley had COVID-19. In addition, it was undisputed that Katie threatened to remove the children from extracurricular activities if she did not receive her telephone calls. In short, the record makes clear that both parties looked for opportunities to skirt the edges of their obligations under the parenting plan and relished the opportunity to deny the other something that they wished to receive, whether that be parenting time or the children's involvement in activities deemed important for the children. The evidence demonstrates that both parents at times have placed greater emphasis on winning a point against the other than acting in the children's best interests. As such, the court's conclusion that both parties had unclean hands as to their willingness to follow the parenting plan is supported by the evidence. For these reasons, we find no clear error in the district court's factual findings and no abuse of discretion in the district court's decision to decline finding Shane in contempt of the court's prior orders.

*Attorney Fees.*

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution and modification cases. *Id.* Additionally, in dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019).

Katie was not the prevailing party in either the modification or contempt action. Because we affirm the district court's decision, we find no abuse of discretion in the district court's decision not to award Katie attorney fees.

CONCLUSION

For the reasons set forth above, we affirm the district court's decisions in all respects.

AFFIRMED.